**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ISAAC THOMAS FLORES,<br><br>        Petitioner,<br><br>        v.<br><br>M. D. McDONALD, et al.,<br><br>        Respondents. | Case No.: 1:10-cv-02234-LJO-JLT<br><br>FINDINGS AND RECOMMENDATIONS TO DENY FIRST AMENDED PETITION FOR WRIT OF HABEAS CORPUS (Doc. 8)<br><br>ORDER DIRECTING THAT OBJECTIONS BE FILED WITHIN TWENTY-ONE DAYS |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**PROCEDURAL HISTORY**

Petitioner is in custody of the California Department of Corrections and Rehabilitation ("CDCR") serving an indeterminate sentence of 51 years-to-life pursuant to a judgment of the Superior Court of California, County of Tulare (the "Superior Court"). On March 12, 2008, Petitioner was convicted by jury of first degree murder and being a felon in possession of a firearm. (Vol. 2, Clerk's Transcript ("Vol. CT") 309-312). The jury also found that Petitioner had intentionally discharged a firearm causing death and that he had personally used a firearm in the commission of a felony. (Id.). Petitioner admitted having served a prior prison term. (Id. at 310). His 51 years-to-life sentence includes two consecutive 25 years-to-life terms plus a consecutive one-year term. (Id. at 341-343).

Petitioner filed a direct appeal in the California Court of Appeals, Fifth Appellate District (the "5th DCA"), raising various claims of instructional error. (Doc. 17, Lodged Documents ("LD") 1). On July 2, 2009, the 5th DCA affirmed Petitioner's conviction and sentence in an unpublished decision. (LD 4). Petitioner filed a petition for review in the California Supreme Court, which denied review on September 9, 2009. (LD 5, 6). On August 23, 2010, Petitioner filed a state habeas petition in the California Supreme Court, raising a single claim of instructional error. (LD 7). The petition was denied on March 23, 2011. (LD 8).

On December 2, 2010, Petitioner filed the instant petition. (Doc. 1). On February 9, 2011, Petitioner filed a first amended petition. (Doc. 8). On June 16, 2011, Respondent filed the Answer. (Doc. 15). On July 15, 2011, Petitioner filed his Traverse. (Doc. 18). Respondent concedes that all grounds for relief in the petition have been fully exhausted. (Doc. 15, p. 6).

## **FACTUAL BACKGROUND**

The Court adopts the Statement of Facts in the 5th DCA's unpublished decision[1]:

On November 16, 2006, Stuart Torres and Carmen Guerrero lived together in an apartment with Guerrero's two daughters. Guerrero admitted that Torres sold methamphetamine and that she had smoked methamphetamine on that date.

According to Guerrero, appellant came to the house twice that day looking for Torres. While he was there, appellant allowed Guerrero to use his cell phone to try and locate appellant. Later, Guerrero was lying on her bed, watching a screen with a live feed from a surveillance camera on the driveway of the apartment, when she saw the lights of a car pull into the driveway and then saw a bright flash. She heard a "big pop" and a scream and saw someone running toward the apartment. Torres ran into the apartment and fell on the floor. Guerrero's daughters screamed. Guerrero asked Torres who shot him and he told her "Isaac Flores." M., Guerrero's daughter, who was 14 at the time of trial, stated that she heard her mother ask Torres who shot him and heard him reply, "Isaac Flores."

A neighbor, Thomas Booth, heard the gunshot and ran to check on his brother, Christopher Tierce, who was outside. He then went to Torres's apartment and attempted to help Torres. He asked him who shot him, and Torres responded "Frog." Booth asked who "Frog" was and Torres said "Isaac Flores." Torres died in Booth's arms.

Tierce and acquaintance Renea Ramirez witnessed the shooting. Both followed Torres into the apartment after he was shot, but left before police arrived. Tierce, a convicted felon and self-

---

[1] The 5th DCA's summary of the facts in its unpublished opinion is presumed correct. 28 U.S.C. §§ 2254(d)(2), (e)(1). Thus, the Court adopts the factual recitations set forth by the 5th DCA.

described "associate" of the Norteno gang, denied that he shot Torres, but admitted that he first told police in an interview and in a subsequent lineup that he could not identify the shooter. He later identified appellant as the suspect and testified that he was outside at the apartment complex when he saw and heard appellant and Torres arguing about money. Appellant got out of the car and started to walk toward Ramirez. He then said, "'You think I'm F'ing playing,'" pulled out a long-barreled gun, and shot Torres. Tierce was afraid he might be killed for testifying and because there were warrants out for his arrest.

Tierce admitted that he was nearsighted and did not have his glasses on at the time of the shooting. The driveway was lit by a single porch light.

Ramirez was on a low wall along the driveway at the apartment complex with Tierce when she saw Torres and someone arguing. Torres was crouched outside a green vehicle, talking to the driver, then came over to where Ramirez and Tierce were. The driver exited his vehicle and approached them. Ramirez heard a shot, but claimed she did not see a gun. Ramirez said she left the scene to tell Torres's brother what had happened. She admitted that she did not immediately go to the police because she figured "they would find me." Ramirez, who was with Torres when he was dying, did not hear him say anything.

Torres's sister, Mary Louise, took Torres to the store just before the shooting. When they returned, she saw a green car parked in front of the complex. The driver of the car wore glasses and a hood. There was another person, never identified, who was on the passenger side of the car. Torres got out of her car, and Mary Louise remained behind in her parked car in the apartment carport to make a telephone call when she saw the driver of the green car get out and pull out a gun. She heard a shot and saw her brother grab his side. She followed the shooter, who fled in his car. She tried to remember the car's license number, but had to give up the chase. She told an officer that the license number included "MVP or 224 or 442."

Detective Fred Ynclan investigated the shooting death of Torres. The bullet recovered from Torres's chest appeared to be .22-caliber or smaller. No bullet casings were found at the scene. Torres's body was found to be positive for methamphetamine, which did not contribute to the cause of death, and two small packages of methamphetamine were found in the pants he was wearing at the time of his death.

The day after the shooting, Detective Ynclan put a green Ford Focus, thought to be linked to appellant, under surveillance. At one point, Ynclan spotted appellant running through an intersection near the Ford Focus. The detective knew appellant from prior police contacts and knew his nickname was "Frog." Detective Ynclan followed appellant, who emptied his pockets of a pipe and a cell phone as he ran. Ynclan ordered appellant to the ground and arrested him.

After being read his <u>Miranda</u> (<u>Miranda v. Arizona</u> (1966) 384 U.S. 436) rights, appellant told officers his nickname was "Frog," that he drove a green Ford Focus, and that he had been at Torres's house on the 16th trying to purchase drugs. When asked why he was running, appellant said he was at his girlfriend's house when he got word that someone was trying to kill him. He denied killing Torres, but said that both he and Torres were considered Norteno dropouts.

3

During the investigation, Guerrero told an investigating officer that Torres had previously been confronted or "hit-up" by an individual named Nick Robles because Torres dropped out of the gang. Guerrero said the encounter "stressed" Torres. Mary Louise Torres told an investigating officer that her brother, after an encounter with some "boisterous" individuals, had told her he was a "northern dropout."

(LD 4, pp. 2-5).

## DISCUSSION

I.       Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution, laws, or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3);  Williams v. Taylor, 529 U.S. 362, 375 n. 7 (2000).  Petitioner asserts that he suffered violations of his rights as guaranteed by the United States Constitution.  The challenged conviction arises out of the Tulare County Superior Court, which is located within the jurisdiction of this court.  28 U.S.C. § 2254(a); 28 U.S.C.§ 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008, 118 S.Ct. 586 (1997);  Jeffries v. Wood, 114 F.3d 1484, 1500 (9th Cir. 1997), *cert. denied*, 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (holding the AEDPA only applicable to cases filed after statute's enactment).  The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

II.      Legal Standard of Review

A petition for writ of habeas corpus under 28 U.S.C. § 2254(d) will not be granted unless he can show that the state court's adjudication of his claim:

(1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)  resulted in a decision that "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d);  Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003);  Williams v. Taylor, 529 U.S.

at 412-413.

A state court decision is "contrary to" clearly established federal law "if it applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or "if it confronts a set of facts that is materially indistinguishable from a [Supreme Court] decision but reaches a different result." Brown v. Payton, 544 U.S. 133, 141 (2005), citing Williams v. Taylor, 529 U.S. 326, 405-406 (2000). A state court decision involves an "unreasonable application" of clearly established federal law "if the state court applies [the Supreme Court's precedents] to the facts in an objectively unreasonable manner." Id., quoting Williams, 529 U.S. at 409-410; Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002)(*per curiam*).

Consequently, a federal court may not grant habeas relief simply because the state court's decision is incorrect or erroneous; the state court's decision must also be objectively unreasonable. Wiggins v. Smith, 539 U.S. 510, 511 (2003) (citing Williams v. Taylor, 529 U.S. at 409).  In Harrington v. Richter, 562 U.S. ___ , 131 S.Ct. 770 (2011), the U.S. Supreme Court explained that an "unreasonable application" of federal law is an objective test that turns on "whether it is possible that fairminded jurists could disagree" that the state court decision meets the standards set forth in the AEDPA.  If fairminded jurists could so disagree, habeas relief is precluded.  Richter, 131 S.Ct. at 786. As the United States Supreme Court has noted, AEDPA's standard of "contrary to, or involv[ing] an unreasonable application of, clearly established Federal law" is "difficult to meet," because the purpose of AEDPA is to ensure that federal habeas relief functions as a "'guard against extreme malfunctions in the state criminal justice systems,'" and not as a means of error correction.  Richter, 131 S.Ct. at 786, quoting Jackson v. Virginia, 443 U.S. 307, 332, 99 S.Ct. 2781, n. 5 (1979)(Stevens, J., concurring in judgment).  The Supreme Court has "said time and again that 'an *unreasonable* application of federal law is different from an *incorrect* application of federal law.'" Cullen v. Pinholster, 131 S.Ct. 1388, 1410-1411 (2011).  Thus, a state prisoner seeking a writ of habeas corpus from a federal court "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement."  Richter, 131 S.Ct. at 787-788. Put

5

another way, a state court's determination that a claim lacks merit bars federal habeas relief so long as "fairminded jurists could disagree" on the state court's decision.  Yarborough v. Alvarado, 541 U.S. 652, 664 (2004).

Moreover, federal "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits."  Cullen, 131 S.Ct. at 1398 ("This backward-looking language requires an examination of the state-court decision at the time it was made.  It follows that the record under review is limited to the record in existence at the same time–i.e., the record before the state court.")

The second prong of federal habeas review involves the "unreasonable determination" clause of 28 U.S.C. § 2254(d)(2).  This prong pertains to state court decisions based on factual findings.  Davis v. Woodford, 384 F.3d at 637, citing Miller-El v. Cockrell, 537 U.S. 322 (2003).  Under § 2254(d)(2), a federal court may grant habeas relief if a state court's adjudication of the petitioner's claims "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  Wiggins v. Smith, 539 U.S. at 520;  Jeffries v. Wood, 114 F.3d at 1500 (when reviewing a state court's factual determinations, a "responsible, thoughtful answer reached after a full opportunity to litigate is adequate to support the judgment").  A state court's factual finding is unreasonable when it is "so clearly incorrect that it would not be debatable among reasonable jurists."  Id. ; see Taylor v. Maddox, 366 F.3d 992, 999-1001 (9th Cir. 2004), cert.denied, Maddox v. Taylor, 543 U.S. 1038 (2004).

The AEDPA also requires that considerable deference be given to a state court's factual findings.  "Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceedings, § 2254(d)(2)."  Miller-El v. Cockrell, 537 U.S. at 340.  Both subsections (d)(2) and (e)(1) of § 2254 apply to findings of historical or pure fact, not mixed questions of fact and law.  See Lambert v. Blodgett, 393 F.3d 943, 976-077 (2004).

To determine whether habeas relief is available under § 2254(d), the federal court looks to the last reasoned state court decision as the basis of the state court's decision. See Ylst v. Nunnemaker, 501 U.S. 979, 803 (1991); Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). Where the state court decided the petitioner's claims on the merits but provided no reasoning for its decision, the federal habeas court conducts "an independent review of the record...to determine whether the state court [was objectively unreasonable] in its application of controlling federal law." Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2002); see Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003). "[A]lthough we independently review the record, we still defer to the state court's ultimate decisions." Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002). Where the state court denied the petitioner's claims on procedural grounds or did not decide such claims on the merits, the deferential standard of the AEDPA do not apply and the federal court must review the petitioner's 's claims de novo. Pirtle v. Morgan, 313 F.3d at 1167.

The prejudicial impact of any constitutional error is assessed by asking whether the error had "a substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 623 (1993); see also Fry v. Pliler, 551 U.S. 112, 119-120 (2007)(holding that the Brecht standard applies whether or not the state court recognized the error and reviewed it for harmlessness). Some constitutional errors, however, do not require that the petitioner demonstrate prejudice. See Arizona v. Fulminante, 499 U.S. 279, 310 (1991); United States v. Cronic, 466 U.S. 648, 659 (1984). Furthermore, where a habeas petition governed by the AEDPA alleges ineffective assistance of counsel under Strickland v. Washington, 466 U.S. 668 (1984), the Strickland prejudice standard is applied and courts do not engage in a separate analysis applying the Brecht standard. Avila v. Galaza, 297 F.3d 911, 918 n. 7 (9th Cir. 2002); Musladin v. Lamarque, 555 F.3d 830, 835 (9th Cir. 2009).

### III. Review of Petitioner's Claims.

The instant petition itself alleges the following grounds for relief: (1) failure to instruct the jury on third party culpability; (2) failure to instruct sua sponte on corroboration requirements of accomplice testimony; (3) failure to give a flight instruction as to witnesses Tierce and Ramirez; and

(4) the instruction erroneously removed implied malice second degree murder from the jury's consideration.

> A.     <u>Failure To Instruct On Third Party Culpability</u>.

Petitioner first contends that the trial court erred in failing to instruct the jury on third party culpability. This contention is without merit.

> 1. <u>The 5th DCA's Decision</u>.

The 5th DCA rejected Petitioner's claim as follows:

> Appellant argues that the trial court erred by refusing to give an instruction requested by the defense on third party culpability. According to appellant, there was evidence that Tierce and/or Ramirez had a gang-related motive to assassinate Torres, a Norteno dropout: Tierce through his own gang affiliation and Ramirez through her allegiance to Tierce. And appellant argues both Tierce and Ramirez showed a consciousness of guilt when they fled the scene before police arrived. Appellant further claims that the court's action violated his due process right to present a meaningful defense under the guarantees of the Fourteenth Amendment to the United States Constitution. We disagree.

> The third party culpability instruction that appellant requested would have read as follows:

>> "Evidence has been offered that a third party is the perpetrator of the charged offense. It is not required that the defendant prove this fact beyond a reasonable doubt. In order to be entitled to a verdict of acquittal, it is only required that such evidence raise a reasonable doubt in your minds of the defendant's guilt."

> The proposed instruction is included in the record among the "refused/withdrawn" instructions, and appellant acknowledges that the record contains no discussion of the instruction or the reason for not giving it.

> Before an instruction on third party culpability may properly be given, there must be substantial evidence capable of raising a reasonable doubt about the defendant's guilt, and there must be direct or circumstantial evidence linking the third party to the crime. Evidence bearing on nothing more than a third party's motive or opportunity to commit the crime is insufficient to raise a reasonable doubt concerning the defendant's guilt. (<u>People v. Prince</u> (2007) 40 Cal.4th 1179, 1242.)

> The proffered defense theory was that appellant did not commit the murder. Defense counsel argued that appellant left the scene before the shooting. The actual shooter drove up with a passenger in a similar car, similar color, a few minutes later and that the "mysterious individual in the hooded jacket or sweater" got out of the car, shot Torres and fled the scene. Defense counsel also mentioned several individuals who had "in the past tried to harm the decedent" but had not been questioned by the police. But nowhere in the defense closing argument did defense counsel suggest or even imply that Tierce or Ramirez may have been the actual shooter.

> Assuming for the sake of argument that the trial court erred in refusing to give this instruction, the trial court's error was not prejudicial. In <u>People v. Earp</u> (1999) 20 Cal.4th 826, the California Supreme Court assumed without deciding that the trial court erred in refusing to give an instruction virtually identical to the one requested by appellant in this case. The court

found that the error was harmless because the jury was instructed that the prosecution had to prove the defendant's guilt beyond a reasonable doubt, and the jury knew from defense counsel's argument that the defendant was contending that another person had committed the crimes. (Id. at p. 887.) The situation is the same here. We likewise find any error by the trial court harmless.

Furthermore, we do not agree with appellant that the failure to give this instruction denied him his right to present his theory of defense and so violated his federal constitutional rights. Appellant was permitted to present evidence and to argue that someone else killed Torres. Thus, appellant was able to present his defense.

(LD 4, pp. 5-6).

2.      Federal Law Regarding Claims Of Instructional Error.

The issue of whether a jury instruction is a violation of state law is neither a federal question nor a proper subject for habeas corpus relief. Estelle v. McGuire, 502 U.S. 62, 68 (1991). ("We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.' "), quoting Lewis v. Jeffers, 497 U.S. 764, 780 (1990); Gilmore v. Taylor, 508 U.S. 333, 348-49 (1993) (O'Connor, J., concurring) ("mere error of state law, one that does not rise to the level of a constitutional violation, may not be corrected on federal habeas"). Indeed, federal courts are bound by state court rulings on questions of state law. Oxborrow v. Eikenberry, 877 F.2d 1395, 1399 (9th Cir.), cert. denied, 493 U.S. 942 (1989). In addition, "the availability of a claim under state law does not of itself establish that a claim was available under the United States Constitution." Sawyer v. Smith, 497 U.S. 227, 239 (1990), quoting, Dugger v. Adams, 489 U.S. 401, 409 (1989).

In reviewing an ambiguous instruction, the inquiry is not how reasonable jurors could or would have understood the instruction as a whole; rather, the court must inquire whether there is a "reasonable likelihood" that the jury has applied the challenged instruction in a way that violates the Constitution. See Estelle v. McGuire, 502 U.S. at 72 & n. 4; Boyde v. California, 494 U.S. 370, 380, 110 S.Ct. 1190, 108 L.Ed.2d 316 (1990). However, a determination that there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution establishes only that an error has occurred. See Calderon v. Coleman, 525 U.S. 141, 146, 119 S.Ct. 500, 142 L.Ed.2d 521 (1998). If an error is found, the court also must determine that the error had a substantial and injurious effect or influence in determining the jury's verdict before granting habeas relief. See id. at 146–47 (citing Brecht v. Abrahamson, 507 U.S. 619, 637, 113 S.Ct. 1710, 123

9

1  L.Ed.2d 353 (1993)).

2        In determining whether instructional error warrants habeas relief, a habeas court must consider

3  "'"whether the ailing instruction by itself so infected the entire trial that the resulting conviction

4  violates due process' ... not merely whether 'the instruction is undesirable, erroneous, or even

5  universally condemned.'"  Henderson v. Kibbe, 431 U.S. 145, 154, 97 S.Ct. 1730 (1977) (quoting

6  Cupp v. Naughten, 414 U.S. 141, 146-47, 94 S.Ct. 396 (1973)); California v. Roy, 519 U.S. 2, 5, 117

7  S.Ct. 337, 338 (1996) (challenge in habeas to the trial court's jury instructions is reviewed under the

8  standard in Brecht v. Abrahamson, 507 U.S. at 637--whether the error had a substantial and injurious

9  effect or influence in determining the jury's verdict.).

10        In a criminal case, an evidentiary device must not undermine the fact-finder's responsibility at

11  trial, based on evidence adduced by the State, to find the ultimate facts beyond a reasonable doubt.

12  County Court of Ulster County, N. Y. v. Allen, 442 U.S. 140, 156, 99 S.Ct. 2213, 2224 (1979); In re

13  Winship, 397 U.S. 358, 364, 90 S.Ct. 1068 (1970).  A permissive inference is one of the most common

14  evidentiary devices, which allows, but does not require, the trier of fact to infer the elemental fact from

15  proof by the prosecutor of the basic one and which places no burden of any kind on the defendant.

16  Ulster, 442 U.S. at 157, 99 S.Ct. at 2224.  "Because this permissive presumption leaves the trier of fact

17  free to credit or reject the inference and does not shift the burden of proof, it affects the application of

18  the 'beyond a reasonable doubt' standard only if, under the facts of the case, there is no rational way

19  the trier could make the connection permitted by the inference."  Id., 442 U.S. at 157, 99 S.Ct. at 2225;

20  U.S. v. Warren, 25 F.3d 890, 897 (9th Cir. 1994); Sterling v. Roe, 2002 WL 826807 (N.D. Cal. 2002).

21  "A permissive inference violates the Due Process Clause only if the suggested conclusion is not one

22  that reason and common sense justify in light of the proven facts before the jury."  Francis v. Franklin,

23  471 U.S. 307, 314-315 (1985).

24        The Due Process Clause of the Fourteenth Amendment "protects the accused against

25  conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the

26  crime with which he is charged."  In re Winship, 397 U.S. 358, 364, 90 S.Ct. 1068, 1073 (1970).  The

27  United States Supreme Court has held that "the Constitution does not require that any particular form

28

10

of words be used in advising the jury of the government's burden of proof.  Rather, taken as a whole, the instructions must correctly convey the concept of reasonable doubt to the jury."  Victor v. Nebraska, 511 U.S. 1, 5, 114 S.Ct. 1239 (1994).  This standard reduces the chance that an innocent person will be conviction.  In re Winship, 397 U.S. at 362.  Winship does not require that every single fact upon which the jury relies be proven to a reasonable doubt.  Many facts not proven to that standard may, collectively, allow the jury to infer that an element of the crime is proven beyond a reasonable doubt.  To enforce Winship's rule, judges must instruct juries that they cannot return a guilty verdict unless the government has met this burden.  Cool v. United States, 409 U.S. 275, 278 (1972).  A jury conviction based upon an impermissibly low quantum of proof violates the jury trial guarantee of the Sixth Amendment.  Sullivan v. Louisiana, 508 U.S. 275, 278 (1993).  A judge can violate a defendant's rights by giving an instruction that undercuts the force of an otherwise proper beyond-a-reasonable-doubt instruction.  See, e.g., Cool, 409 U.S. at 102-103; Sandstrom v. Montana, 442 U.S. 510, 521 (1979).

When a jury instruction is susceptible to a reading that would render the verdict unconstitutional and another that would generate a proper verdict, the reviewing court considers the challenged instruction in light of the full jury charge and in the context of the entire trial.  See Naughten, 414 U.S. at 145-147(consider charge as whole); United States v. Park, 421 U.S. 658, 675 (1975)(consider context of whole trial).  The court must then decide whether there is a reasonable likelihood that the jury applied the challenged instruction in an unconstitutional manner.  Estelle, 502 U.S. at 72.  A verdict remains valid if a jury instruction only tangentially undercut a proper beyond-a-reasonable-doubt instruction.  Naughten, 414 U.S. at 149-150.

        3.    Analysis.

First, to the extent that Petitioner's claim is that the trial court's instructional failure was a violation of California state law, such a claim must be rejected because it fails to state a cognizable federal habeas claim.  As discussed above, "the fact that [an] instruction was allegedly incorrect under state law is not a basis for habeas relief."  Estelle, 502 U.S. at 71-72.

Second, to the extent that Petitioner's claim can be understood to argue that the state court

1   adjudication was contrary to or an unreasonable application of clearly established federal law, as

2   determined by the United States Supreme Court, such a claim must also be denied.

3           As the 5th DCA pointed out, the record does not disclose any reasons why the trial court

4   rejected the instruction on third-party culpability.  However, assuming it was not withdrawn by the

5   defense, the only reasonable explanation was that, under California law, the trial court concluded that

6   there had been <u>insufficient</u> evidence presented that either Tierce or Ramirez was involved in the

7   shooting.  As the 5th DCA discussed, under California law, before such an instruction can be given,

8   there must first be *both* a reasonable doubt about the defendant's guilt *and* direct or circumstantial

9   evidence linking the third parties, i.e., Tierce and Ramirez, to the crime; evidence that third parties had

10  motive or opportunity, is insufficient.

11          In this case, Tierce saw Petitioner pull out of weapon and shoot the victim, Torres.  (2 RT 82).

12  Ramirez saw Petitioner and the victim talking to each other.  (2 RT 138).  Ramirez saw Torres run into

13  his apartment after she heard the shot.  (2 RT 139-141).  Tierce and Ramirez followed Torres into his

14  house.  (2 RT 91-92, 141).  Ramirez did not actually see Petitioner shoot the victim.  (2 RT 170).

15  Tierce was associated with Norteno gang members and the victim was a drop out from the Norteno

16  gang.  (2 RT 209).  Both Tierce and Ramirez left the crime scene before police arrived.  (2 RT 91-92,

17  141).

18          Based on these circumstances, the Court agrees with the state court that there is insufficient

19  evidence to suggest that either Tierce or Ramirez shot the victim and there is very strong eyewitness

20  evidence that Petitioner did.  Although both Tierce and Ramirez were present, nothing else would tend

21  to show that they were involved in the victim's murder.  Tierce's association with the street gang from

22  which the victim had dropped out provides only the most speculative and tenuous of motives, but no

23  real evidence of any involvement in the shooting.  Under such circumstances, the state court's

24  determination that the third-party culpability instruction should not be given appears to be a correct

25  application of California law.

26          To the extent that Petitioner contends that his right to a fair trial was damaged by not giving the

27  instruction because he was not permitted to present his theory of the case, the 5th DCA correctly

28

                                                    12

disposed of that contention by pointing out that defense counsel never argued to the jury that either Tierce or Ramirez was involved in the shooting.  Rather, it was always the defense theory of the case that someone--a "mystery" person--committed the shooting after Petitioner had left the scene.  Given these circumstances, the state court's rejection of Petitioner's argument was objectively reasonable.

Moreover, the state court found any error to be harmless.  Applying AEDPA's deferential standard, the Court agrees with this conclusion.  The proffered instruction would have instructed the jury that "evidence has been offered that a third party is the perpetrator of the charged offense," and that if such evidence raises a reasonable doubt in the minds of the jurors about Petitioner's guilt, he would be entitled to an acquittal.  The state court concluded that the reasonable doubt instruction was sufficient to cover the eventualities discussed in the rejected thirty-party accomplice instruction, since both remind jurors that Petitioner must be acquitted if the jurors have a reasonable doubt as to his guilt.  From that perspective, the rejected instruction is simply duplicative of instructions already given to the jurors.  Hence, any error in refusing to give the proffered instruction would necessarily be harmless.

For these reasons, the state court's adjudication of this issue is neither contrary to nor an unreasonable application of clearly established federal law.

B.    Failure To Instruct On The Corroboration Requirements Of Accomplice Testimony.

Petitioner next contends that the trial court erred in failing to give a sua sponte instruction on the requirements under Californian law for accomplice testimony.  Again, this contention is without merit.

1.    The 5th DCA's Decision.

The 5th DCA rejected Petitioner's claim as follows:

Appellant next claims the trial court erroneously failed to instruct the jury, sua sponte, that Tierce and Ramirez were potential suspects in the shooting and that their testimony therefore required corroboration and should have been viewed with suspicion. Specifically, appellant contends that the trial court erred by failing to instruct the jury with CALCRIM No. 334, which would have provided the jurors with a definition of an accomplice, informed them that accomplice testimony that tends to incriminate the defendant should be viewed with caution, and that a conviction based on an accomplice's testimony requires corroboration. We find no error.

An accomplice is a person "who is liable to prosecution for the identical offense charged

against the defendant." (§ 1111.) If there is evidence to permit a jury to find by a preponderance of the evidence the witness was an accomplice, the trial court must instruct the jury that the witness's testimony should be viewed with distrust and that the testimony cannot support a conviction absent corroboration. (<u>People v. Hernandez</u> (2003) 30 Cal.4th 835, 874; <u>People v. Tobias</u> (2001) 25 Cal.4th 327, 331 ["'[w]hen there is sufficient evidence that a witness is an accomplice, the trial court is required on its own motion to instruct the jury on the principles governing the law of accomplices,' including the need for corroboration"]; <u>see</u> CALCRIM No. 334.) On the other hand, "'"[I]f the evidence is insufficient as a matter of law to support a finding that a witness is an accomplice, the trial court may make that determination and, in that situation, need not instruct the jury on accomplice testimony."'" (<u>People v. Hinton</u> (2006) 37 Cal.4th 839, 879.)

Appellant contends that Tierce and Ramirez's testimonies triggered the trial court's obligation to instruct the jury regarding accomplice testimony because the jury could reasonably have deemed either to be an accomplice. Respondent argues that the trial court had no such obligation because there was no evidence that either Tierce or Ramirez had any knowledge of or intent to aid or encourage appellant's shooting of Torres or that either one of them was the shooter. We agree that there was no evidence that either Tierce or Ramirez was an accomplice. Appellant did not claim at trial that Tierce or Ramirez helped him commit the crime, nor was there evidence they were working together, or that either Tierce or Ramirez shot Torres.

In any event, any error was harmless. The failure to instruct the jury regarding accomplice testimony is subject to harmless error analysis under <u>People v. Watson</u> (1956) 46 Cal.2d 818, 837. (<u>People v. Avila</u> (2006) 38 Cal.4th 491, 562; <u>People v. Hinton, supra</u>, 37 Cal.4th at p. 881; <u>People v. Lewis</u> (2001) 26 Cal.4th 334, 371.) Any error in failing to provide such instruction does not warrant reversal unless there is a reasonable probability that the error influenced the jury's verdict. (<u>Ibid</u>.)

Here, there is no reasonable probability that the jury's verdict would have been any different had the trial court given instructions regarding accomplice testimony. An instruction advising the jury to view Tierce or Ramirez's testimony "that tend[ed] to incriminate the defendant" with caution, and requiring corroboration, however "slight," of such testimony (CALCRIM No. 334), would have had little effect given that others at trial also helped to establish appellant's guilt. Guerrero, Booth, and Guerrero's daughter all testified that Torres said, as he was dying, that appellant shot him. Torres's sister saw someone shoot appellant and was able to give officers information concerning the shooter's car. Appellant was subsequently apprehended after a car matching Torres's sister's description was placed under surveillance. The prosecution's case, even without Tierce or Ramirez's testimony, included powerful evidence that appellant shot Torres.

In addition, although not specifically instructed to discount Tierce or Ramirez's testimony, the jury was instructed with respect to factors to consider in evaluating witness testimony, including whether the witness's testimony was "influenced by a factor such as bias or prejudice, a personal relationship with someone involved in the case, or a personal interest in how the case is decided" as well as "anything that reasonably tends to prove or disprove the truth or accuracy of [the witness's] testimony." (CALCRIM No. 226.) Thus, to the extent the point was not readily apparent without instruction, these factors suggested that Tierce or Ramirez's potential complicity in appellant's crime was a factor to be considered in determining their credibility.

In sum, given the independent evidence establishing appellant's guilt, as well as the instructions the jury did receive, we conclude that there is no reasonable probability that the absence of accomplice testimony instruction in any way impacted the jury's verdict. The challenged instructional omission, if erroneous, was harmless. (<u>See, e.g., People v. Hinton</u>,

*supra*, 37 Cal.4th at p. 881 [error in failing to give accomplice instructions was harmless because " 'the instructions requested would have informed the jury to view [the accomplice's] testimony with distrust if the jury determined that [the accomplice]-and not defendant-committed the crimes. Any reasonable juror would reach this conclusion without instruction'"]; People v. Avila, *supra*, 38 Cal.4th at pp. 562-563 [trial court's failure to instruct on accomplice testimony was harmless due to "'independent evidence,' ... 'tend[ing] to connect the defendant with the crime charged' without aid or assistance from the accomplice's testimony"].)

(LD 4, pp. 7).

        2.    Analysis.

First, as was true with the previous claim, to the extent that Petitioner's claim is that the trial court's failure to instruct was a violation of California state law, such a claim must be rejected because it fails to state a cognizable federal habeas claim. As discussed above, "the fact that [an] instruction was allegedly incorrect under state law is not a basis for habeas relief." Estelle, 502 U.S. at 71-72.

Second, to the extent that Petitioner's claim can be understood to argue that the state court adjudication was contrary to or an unreasonable application of clearly established federal law, as determined by the United States Supreme Court, such a claim must be denied.

Under California law, a conviction cannot be obtained upon the testimony of an accomplice unless other evidence, tending to connect the defendant with the offense, corroborates the accomplice's testimony. Cal. Pen. Code § 1111. The United States Supreme Court has held, "The Fourteenth Amendment does not forbid a state court to construe and apply its laws with respect to the evidence of an accomplice." Lisenba v. California, 314 U.S. 219, 227 (1941). Significantly, for purposes of the AEDPA, due process does not prohibit the use of uncorroborated accomplice testimony. See United States v. Augenblick, 393 U.S. 348, 352 (1969) (explaining "the use of accomplice testimony is not catalogued with constitutional restrictions" of procedural due process); Darden v. United States, 405 F.2d 1054, 1056 (9th Cir.1969) ("it is well established that a conviction in federal court may be based on the uncorroborated testimony of an accomplice"); Harrington v. Nix, 983 F.2d 872, 874 (8th Cir. 1993) ("state laws requiring corroboration do not implicate constitutional concerns that can be addressed on habeas review"); Odle v. Calderon, 884 F.Supp. 1404, 1418 (N.D. Cal. 1995) ("corroboration of accomplice testimony is not a federal constitutional requirement"). Given that uncorroborated testimony from an accomplice is permissible under the Constitution, the

1   trial court's failure to instruct on uncorroborated accomplice testimony, even if a violation of state

2   law, cannot not violate Petitioner's *federal* due process rights.  Consequently, Petitioner fails to

3   demonstrate the decision of the state court was "contrary to, or involved an unreasonable application

4   of, clearly established Federal law."  <u>See</u> 28 U.S.C. § 2254(d).

5           However, even were that not true, the state court's adjudication is nonetheless objectively

6   reasonable.  As discussed in the previous section, there was no evidence that either Tierce or Ramirez,

7   although present during the shooting, were involved in any way, or were acting in concert with

8   Petitioner as his accomplices.  Moreover, defense counsel never argued at trial that either person was

9   an accomplice, or that Petitioner ever had any accomplices.  Indeed, the defense theory, as mentioned,

10  was that some "mystery" person killed the victim after Petitioner had left the scene.  Under those

11  circumstances, applying California law, the 5th DCA correctly concluded that the trial court was not

12  required to issue an accomplice instruction to jurors.

13          C.      <u>Failure To Give A Flight Instructing For Tierce And Ramirez</u>.

14          Petitioner next contends that the trial court erred by failing to instruct the jury on flight by

15  Tierce and Ramirez.  This contention also lacks merit.

16                  1.      <u>The 5th DCA's Decision</u>.

17  The 5th DCA rejected this claim as follows:

18  The trial court instructed the jury with the standard instruction covering use of a defendant's
    flight as evidence of guilt. Appellant contends that the giving of the instruction on appellant's
19  flight from the crime scene without giving a similar instruction on witnesses Tierce and
    Ramirez denied him a fair trial. We disagree.
20

21  The trial court has a sua sponte duty to instruct on the effects of flight as it relates to a
    defendant in a criminal case. (<u>People v. Bonilla</u> (2007) 41 Cal.4th 313, 328; see also § 1127c
22  [requiring instruction where prosecution relies on flight as evidence of guilt].) Such an
    instruction is proper, "'where the evidence shows that the defendant departed the crime scene
23  under circumstances suggesting that his movement was motivated by a consciousness of guilt.'
    [Citations.]" (<u>People v. Bradford</u> (1997) 14 Cal.4th 1005, 1055.) Here, the evidence supported
24  the giving of the instruction as there was evidence that appellant left the scene after the
    shooting. Appellant does not contend otherwise.
25

26  But appellant does contend that the trial court should also have given the instruction in relation
    to Tierce and Ramirez. He relies on <u>People v. Henderson</u> (2003) 110 Cal.App.4th 737, where
27  the appellate court addressed whether a defendant is entitled to instruction on flight of an

28

16

allegedly culpable third party. The court in <u>Henderson</u> agreed with the defendant that evidence of flight by a third party "after being accused of a crime or after acquiring knowledge of the crime, could be relevant to the jury's determination of whether the third party's conduct raises a reasonable doubt as to the identity of the perpetrator. Accordingly, we believe a defendant would be entitled to a special instruction, in the nature of a pinpoint instruction, if properly prepared and submitted by the defense." (<u>Id</u>. at p. 741.) But the court also determined that no authority compelled a trial judge to draft such an instruction or to give it on the court's own motion. (<u>Id</u>. at p. 743-744.)

Here, we do not find that appellant was entitled to such a pinpoint instruction. None was offered. Furthermore, there was evidence that neither Tierce nor Ramirez fled the scene after the shooting. In fact, both followed Torres into his apartment to check on him after the shooting. While both Tierce and Ramirez left before police arrived, they were questioned at trial as to why they did so.

Even if we assume, for purpose of argument, that the trial court had a duty to give such an instruction, any error in this case was plainly harmless. The evidence of third party culpability was extremely weak. At most it demonstrated that Tierce and Ramirez both were present at the time of the shooting. But there was no evidence offered connecting either Tierce or Ramirez with the commission of the shooting.

Given the weakness of the third party defense evidence, the fact that the court instructed the jury generally that it could question Tierce and Ramirez's testimony and that conduct of flight may show a consciousness of guilt, and the positive identification of appellant by Guerrero and Booth, we are satisfied beyond a reasonable doubt that any error in failing to instruct on third party flight did not contribute to the convictions. Any such error was harmless. (<u>People v. Mask</u> (1986) 188 Cal.App.3d 450, 456; <u>People v. Watson, supra</u>, 46 Cal.2d at p. 836.)

(LD 4, pp. 10-11).

        2.    <u>Analysis</u>.

    First, as was true with the previous two claims, to the extent that Petitioner's claim is that the trial court's failure to instruct was a violation of California state law, such a claim must be rejected because it fails to state a cognizable federal habeas claim. <u>Estelle</u>, 502 U.S. at 71-72.

    Second, to the extent that Petitioner's claim can be understood to argue that the state court adjudication was contrary to or an unreasonable application of clearly established federal law, as determined by the United States Supreme Court, such a claim must be denied.  Petitioner does not cite, and the Court has been unable to find, any "clearly established" Supreme Court law that considers a flight instruction critical to a fair trial under the U.S. Constitution.  However, even assuming that were

1    not the case, a defendant is entitled to an instruction on his theory of the case "if the theory is legally

2    sound *and the evidence in the case makes it applicable*."  Clark v. Brown, 442 F.3d 708, 714 (9th Cir.

3    2006)(emphasis supplied).  As in the previous two claims, no evidence was ever presented to support a

4    flight instruction as to Tierce and Ramirez.  First, Tierce and Ramirez followed the victim back to his

5    house to check on him.  Second, although they left before police arrived, given that there was no

6    evidence that either individual was involved in the shooting, a flight instruction under such

7    circumstances would be completely inappropriate and, worse, would likely confuse jurors since the

8    defense had never argued that either Tierce or Ramirez was the actual shooter or that they were acting

9    as accomplices of Petitioner in the shooting.

10        D.    Removal Of Implied Malice Second Degree Murder From The Jury's Consideration.

11        Finally, Petitioner argues that the instructions effectively removed implied malice second

12    degree murder from the jury's consideration.  Again, Petitioner's contention lacks merit.

13            1.    The 5th DCA's Decision.

14    The 5th DCA decided against Petitioner's claim as follows:

15    The jury was instructed on the elements of murder (CALCRIM Nos. 500, 520); that murder is
      classified into two degrees; and that, if it determined appellant had murdered Torres but had a
16    reasonable doubt as to whether the murder was first degree murder rather than a lesser crime, it
      was required to "find the defendant not guilty of first degree murder." (CALCRIM No. 521.)
17    The verdict forms provided the jury with the option to acquit appellant or return a conviction
      for murder in the first degree, murder in the second degree, or voluntary manslaughter.
18
      Appellant contends that the trial court erred when it instructed the jury, in the language of
19    CALCRIM No. 252, that all forms of murder, including murder in the first and the second
      degree, required a finding of specific intent to kill. Thus, according to appellant, he was denied
20    his right to fair consideration of a conviction of implied malice second degree murder as a
      lesser offense to premeditated murder. The jury, that is, according to appellant, was given the
21    Hobson's choice of convicting him of either a specific intent murder or voluntary
      manslaughter. If the jury believed that appellant acted with implied malice, it had no avenue by
22    which to express its conclusion.

23    We disagree.

24    Appellant bases his argument primarily on the language of CALCRIM No. 252, which, as
      given, instructed the jury:
25
      "The crime ... charged in Count 1 require[s] proof of the union or joint operation of act
26    and wrongful intense [sic ]. [¶] The following crime or allegations require general
      criminal intent: Felon in possession of firearm, as charged in Count 2; voluntary
27    manslaughter, as charged in the lesser included offense of Count 1, and use of a
      weapon. [¶].... A person acts with wrongful intent when he or she intentionally does a
28

prohibited act on purpose; however, it is not required that he or she intend to break the law. The act required is explained in the instruction for that crime or allegation. [¶] The following crimes and allegations require a specific intent or mental state: First degree murder as charged in Count 1; or second degree murder, which is a lesser included offense of Count 1.[¶] For you to find a person guilty of this crime ..., that person must not only intentionally commit the prohibited act but must do so with a specific intent and/or mental state. The act and the specific intent and/or mental state required are explained in the instruction for that crime or allegation." (Italics added.)

What appellant ignores, however, is the language emphasized with italics in this quotation from the instruction given-to wit, the words, thrice repeated, that both first and second degree murder require proof that the prohibited act be done with either a specific intent or a "mental state." Further, appellant ignores the statement that the required specific intent "or mental state" will be explained in the instruction on the particular crime in question. Finally, appellant ignores the instructions given on murder and the required mental state of malice aforethought:

"[Appellant] is charged in Count 1 with murder in violation of ... Section 187.[¶] To prove that [appellant] is guilty of this crime, the People must prove that, one, [appellant] committed an act that caused the death of another person; and, two, when [appellant] acted, he had a state of mind called malice aforethought .[¶] There are two kinds of malice aforethought, express malice and implied malice. Proof of either is sufficient to establish ... the state of mind required for murder. [¶] [Appellant] acted with express malice if he unlawfully intended to kill. [¶] [Appellant] acted with implied malice if, one, he intentionally committed an act; two, the natural consequences of the act were dangerous to human life; three, at the time he acted he knew his act was dangerous to human life; and four, he deliberately acted with conscious disregard for human life. [¶] Malice aforethought does not require hatred or ill will toward the victim.... It does not require deliberation or the passage of any particular period of time.... [¶] ... [¶] If you decide that [appellant] has committed murder, you must decide whether it is murder of the first or second degree. [¶] [Appellant] is guilty of first degree murder if the People have proved that he acted willfully, deliberately, and with premeditation. [Appellant] acted willfully if he intended to kill. [Appellant] acted deliberately if he carefully weighed the considerations for and against his choice and, knowing the consequences, decided to kill. [Appellant] acted with premeditation if he decided to kill before committing the act that caused death. [¶] ... [¶] All other murders are of the second degree."

We discern nothing in these instructions that, in any way, withdrew from the jury's consideration the possibility that appellant was guilty of implied malice second degree murder. We reject appellant's argument to the contrary.

(LD 4, pp.11-13).

        2.      Analysis.

        Once again, to the extent that Petitioner's claim is that the trial court's failure to instruct was a

violation of California state law, such a claim must be rejected because it fails to state a cognizable

federal habeas claim.  Estelle, 502 U.S. at 71-72.

        Second, to the extent that Petitioner's claim can be understood to argue that the state court

adjudication was contrary to or an unreasonable application of clearly established federal law, as

determined by the United States Supreme Court, such a claim must be denied. As the 5th DCA explained, CALCRIM No. 252 instructs the jury that both first and second degree murder require a specific intent or mental state. (LD 4, p. 12). No. 252 also explains that the specific intent or mental state is set forth in the instruction addressing the particular charged crime. In this case, those instructions were CALCRIM No. 520 (informing jurors that to be guilty of murder the defendant must have acted with express or implied malice, and that only express malice requires an intent to kill), and CALCRIM No. 521 (explaining that first degree murder requires an intent to kill and that all other murders are murders in the second degree).

As can be seen from the above discussion, those instructions taken as a whole, did not remove from the jury's consideration the question of an implied malice second degree murder conviction, since CALCRIM No. 252 directs the jurors to the specific intent and mental state provided for both first and second degree murder. When jurors read those specific instructions, they were clearly informed that second degree murder could be based on implied malice. Accordingly, the state court's conclusion that nothing "in these instructions [ ] in any way [ ] withdrew from the jury's consideration the possibility that appellant was guilty of implied malice second degree murder," (LD 4, p. 13), was not objectively unreasonable.

## **RECOMMENDATION**

Accordingly, the Court **RECOMMENDS** that Petitioner's Petition for Writ of Habeas Corpus (Doc. 1), be **DENIED** with prejudice.

This Findings and Recommendation is submitted to the United States District Court Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within twenty-one (21) days after being served with a copy of this Findings and Recommendation, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the Objections shall be served and filed within ten (10) court days (plus three days if served by mail) after service of the Objections. The Court will then review the Magistrate Judge's ruling pursuant to 28

U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the Order of the District Court.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).


IT IS SO ORDERED.

     Dated:  __**November 5, 2013**__           _____**/s/ Jennifer L. Thurston**_
                                                UNITED STATES MAGISTRATE JUDGE